# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JOHAN SEBASTIAN ALZAT
CALIXTO, acting on behalf of infant
child, M.A.Y.,

    Petitioner,

v.                                            Case No: 8:17-CV-2100-T-33JSS

HADYLLE YUSUF LESMES,
    Respondent.
_____/

## RESPONDENT'S VERIFIED ANSWER AND AFFIRMATIVE DEFENSES TO PETITIONER'S VERIFIED PETITION FOR RETURN OF THE CHILD

Respondent, Hadylle Yusuf Lesmes ("Mother" or "Respondent"), through her pro bono counsel, Shutts & Bowen LLP, hereby responds to the Verified Petition for the Return of the Child to Columbia pursuant to Federal Statute ("Petition") filed against her by Johan Sebastian Alzat Calixto ("Father" or "Petitioner"), seeking the return to Columbia of minor child M.A.Y. (the "Child").[1]

## PREAMBLE

1. Admitted the referenced documents speak for themselves, otherwise denied.

---

[1] Pursuant to Fed. R. Civ. P. 5.2(a), the minor child's initials are used here in lieu of her full name, her name has been redacted from all exhibits, her birthday is referred to herein only by the month and year of her birth.

2. Admitted the referenced documents speak for themselves, otherwise denied.

3. Admitted the referenced documents speak for themselves, otherwise denied.

4. Admitted the referenced documents speak for themselves, otherwise denied.

5. Admitted the referenced documents speak for themselves, otherwise denied.

6. Admitted the referenced documents speak for themselves, otherwise denied.

7. Admitted.

8. Admitted.

9. Denied. Petitioner and Respondent began dating when Respondent was 16 and Petitioner was 22. The Child was born in 2012 after which Petitioner proposed marriage and Respondent accepted. The engagement was terminated by Respondent in October 2012 upon learning Petitioner had been unfaithful and Petitioner thereafter admitted same. The parties dated off and on thereafter. The parties briefly resided together during 2014, but otherwise maintained separate residences. Respondent terminated the relationship in or about August 2015. Despite the deterioration and ultimate termination of the romantic relationship, Respondent endeavored to foster Petitioner's continued relationship with the Child.

10. Admitted.

11. Admitted that Respondent is a Colombian citizen residing in the United States under a U.S. permanent residency card, otherwise denied.

12. Admitted that the parties are the biological parents of the minor Child who was born in Colombia and for whom the parents secured the Child's U.S. permanent residency card. The Child has been a permanent resident in the United States since November 24, 2015. Otherwise, denied.

13. Denied. The parties did not reside together in 2015. At all times material hereto, and with the exception of a brief period in 2014 during which Respondent stayed with Petitioner at various residences, Respondent always resided and/or stayed at her mother's Colombian residence. Respondent in fact terminated the couple's relationship in or about August 2015 due to Petitioner's continued verbal abuse. The Child's relocation to the United States as a U.S. permanent resident in November 2015 also occurred with Petitioner's knowledge, permission and assistance. Prior to the Child's relocation, the parties jointly endeavored to secure the Child's U.S. permanent residency. Following the interim approval of the Child's application, Petitioner took the Child to the special medical exam in October 2015 and thereafter attended the November 2015 government interview with Respondent, both of which were required for the Child's relocation to the United States as a permanent resident.

      14.    Denied in part. Respondent's father is a U.S. permanent resident and applied for Respondent's U.S. permanent residency in or about 2001. Prior to and following the Child's birth, Petitioner was aware of Respondent's pending U.S. residency application and Respondent's intention to permanently relocate to the United States. During the relationship, the parties discussed the possibility of Petitioner relocating to the United States. The parties' were briefly engaged after the Child's June 2012 birth but the engagement was terminated in or about October 2012 after Petitioner was unfaithful. The couple dated on and off until Respondent terminated the relationship in August 2015; despite Respondent's repeated protests, Petitioner continued to beg and/or otherwise demand reconciliation. Although Respondent refused, she endeavored to facilitate and encourage the Child's relationship with the Petitioner both before and after the Child's agreed upon permanent relocation to the United States. Petitioner was aware there was no means by which Respondent could apply to sponsor an application for a permanent U.S. residency for Petitioner and at least as of April 2015, Petitioner had applied for a tourist visa. At the time of the Child's relocation, Petitioner had not secured a tourist visa. It was agreed that Respondent would visit Colombia with the Child after a year. However, and after Petitioner learned Respondent had begun dating someone, Petitioner resumed prior verbal abuse and began harassing Respondent to include intermittent threats to take the Child from Respondent. Petitioner

repeatedly contacted Respondent at work and repeatedly called at very late hours, compelling Respondent to conceal her work place and utilize a block to prevent Petitioner's late night and otherwise inappropriate calls. Despite the Petitioner's conduct, Respondent has ensured near daily contact between Petitioner and the Child and continues to do so through today.  Respondent has also always maintained a mailing address for Petitioner to send items to the Child, though Petitioner has never done so.  However, and due to Petitioner's conduct and threats, Respondent has not visited Colombia with the Child.

15.   Denied.   Petitioner presents no documentation of any such communication with ICBF. Petitioner advised Respondent his tourist visa applications were denied because the government belief Respondent had been untruthful in his applications.  Petitioner at one time advised he intended to illegally cross the U.S. border and insisted Respondent retrieve him, which Respondent refused.  Respondent did not visit Colombia in November 2016 as previously planned for the reasons noted above and herein this answer. Respondent has maintained regular and near daily contact between the Child and Petitioner; Respondent temporarily blocked Petitioner's calls as necessary to prevent extremely late calls. Respondent's voicemail in which Respondent asks Petitioner to stop telling lies and denying Petitioner's claim that she lied, speaks for itself. Further, Petitioner was aware that Respondent had no means by which to

5

assist and/or apply for Petitioner's entry into the United States, as further evidenced by Petitioner admissions and applications for a tourist visa prior to and following the Child's agreed upon relocation to the United States.  Upon the Child's agreed upon relocation to the United States, Respondent maintained regular contact between the then 3 year old Child and Petitioner, and Respondent continues to maintain near daily contact between the now 5 year old Child and Petitioner through present day.

16.   Denied for the reasons stated herein.

17.   Denied.  The Child's habitual residence shifted to the United States upon the parties' concerted actions to secure the Child's U.S. permanent residency card and relocate the Child to the United States as a permanent U.S. resident. The parties have never been married and their relationship was terminated prior to the Child's agreed upon relocation to the United States as a permanent U.S. resident. Petitioner was aware Respondent had no means to initiate immigration papers on Petitioner's behalf and Petitioner instead pursued a tourist visa for himself both before and after the Child's agreed upon relocation to the United States.

18.   Denied.  Prior to and after the Child's birth, Respondent and the Child resided and/or stayed with Respondent's mother while Petitioner resided elsewhere.  Following Respondent receiving her U.S. permanent residency, Respondent and the Child stayed with Petitioner in various residences briefly

during 2014. At all other times, Respondent and the Child resided and/or otherwise stayed with Respondent's mother at the mother's Colombian residence. Upon returning to the United States in or about November 2014, Respondent left the Child in the care of Respondent's mother. At some point thereafter, Petitioner apparently moved in with Respondent's mother. Upon Respondent's visit to Colombia in November 2015 to retrieve the Child for the purpose of the Child's agreed upon relocation to the United States, Respondent stayed at her mother's house until the Respondent and Child's return to the United States that same month.

19. Denied. Respondent enrolled the Child in Colombian preschool and paid for same. During the periods Respondent was in the United States and while the Child's U.S. permanent residency application was pending, Respondent sent money to her mother to care for her Child. Respondent also sent money to Petitioner to continue the Child's healthcare coverage previously secured by Respondent and for the Child's related expenses.

20. Admitted that there are no other such persons.

21. Admitted the referenced document speaks for itself.

22. Admitted the referenced document speaks for itself.

23. Denied. First, the Hague convention does not define habitual residence. Second, the Child's habitual residence shifted to the United States upon

the Child's agreed upon relocation to same with Petitioner's knowledge, agreement and assistance. The Child has continually resided in the United States since becoming a U.S. permanent resident. Prior to the Child's agreed upon relocation, and thereafter, Petitioner applied for a tourist visa for the purposes of visiting the Child in the United States. Although Respondent has not visited Colombia in part due to Petitioner's threats to seize the Child and never let Respondent see her again, Respondent has and continues to maintain nearly daily contact between the Child and Petitioner, to include both telephonic and video visitation. The Child's whereabouts have not been concealed and Respondent has ensured regular contact between the Petitioner and Child, to include near daily contact through present day both before and after Respondent's receipt of the underlying petition Friday, September 15, 2017.

24.     Admitted Petitioner is the Child's father and that the referenced documents speak for themselves, otherwise denied.

25.     Denied. For the reasons already stated herein this answer, the parties did not reside together as an intact family. Again, the parties were not married, resided together briefly in 2014, and Respondent at all other times resided and/or stayed at her mother's residence in Colombia.

26.     Admitted.

27.     Admitted.

28. Denied. The Child's retention was not wrongful. For the reasons stated herein this answer, the Child's agreed upon permanent relocation to the United States was effected with Petitioner's knowledge, permission and assistance. The purported conditioning now claimed by Petitioner is without merit; Petitioner was aware Respondent had no means or ability to apply for Petitioner's immigration to the United States and the Petitioner applied for tourist visas himself both before and after the Child's agreed upon relocation for the purpose of visiting the Child in the United States. Further, Petitioner does not have the unilateral authority to change the Child's habitual residence and dictate her return to Colombia. However, and to the extent Petitioner claims to possess such unilateral authority, Petitioner claims to have demanded the Child's return in December 2015 and his petition was due to be filed within one year of same which Petitioner failed to do.

29. No admission or denial required. The Child has habitually resided in the United States for approximately two years and Respondent has no intention of removing the Child from same. The Child's travel documents have since been delivered to this Court pending the resolution of these proceedings.

30. Denied. Respondent has not concealed herself or the Child and as evidenced by the record, the petition was served at Petitioner's known mailing address.

31. Without knowledge and therefore denied. Respondent is of limited financial means and is receiving legal assistance from the undersigned firm at a significantly reduced rate.

32. No admission or denial required. Respondent requests an award of legal expenses incurred as a result of this action.

33. No admission or denial required. Respondent will submit appropriate documentation pursuant to a timely motion allowed under the rules and/or by application to this Court.

## AFFIRMATIVE DEFENSES[2]

In addition to the specific responses to the numbered paragraphs in the Petition, Respondent asserts the following affirmative defenses:

34. The Child's relocation to, and continued residence in, the United States as a U.S. permanent resident was not wrongful as it was effected with Petitioner's knowledge, consent, permission and assistance. Petitioner therefore fails to state a cause of action for wrongful taking and/or retention under the Hague and ICARA.

---

[2] The petition purports to allege both a wrongful taking and a wrongful retention. During the evidentiary hearing, Petitioner advised the Court through counsel that he would be proceeding solely on the wrongful retention. With that understanding, Respondent does not include affirmative defenses specifically directed to allegations of a wrongful taking.

35. The petition concedes Petitioner's knowledge, consent, permission and assistance with acquiring the Child's U.S. permanent residency and effecting the Child's relocation to the United States as a permanent resident. The petition further concedes Petitioner's efforts to secure a tourist visa for the purpose of visiting the Child's in the United States. Petitioner further claims he has been denied the ability to visit with the Child. As such, and as framed by Petitioner's own allegations, Petitioner alleges a violation of his rights of access rather than a violation of any purported custody rights to the Child. To the extent the Petitioner purports to state a cause of action for violation of his rights of access, i.e. visitation rights, the Petitioner concedes his inability to visit his daughter in the United States was due to his applications for a tourist visa having been denied. Respondent has further been unable to bring the Child for a visit to Colombia due to Petitioner's threats to seize the Child and conceal the Child from Respondent. Petitioner's inability to visit with the Child in person is therefore due to Petitioner's own action and/or inaction. Further and contrary to Petitioner's sworn allegations, Respondent has maintained regular communications between Petitioner and the Child, to include near daily video and telephonic contact through present day. Petitioner therefore fails to state a cause of action for violation of rights of access under the Hague and ICARA.

36. The Child's habitual residence shifted to the United States upon the Child's relocation to the United States with the Petitioner's knowledge, consent, permission and assistance, where the Child has continually resided with a settled purpose for the past two years since arriving at the age of 3 years old. The Child, now 5 years old, has extensive connections to her habitual residence in the United States vis a vis her status as a U.S. permanent resident, her regular and continued participation in scholastic and extra-curricular activities, her acquisition of fluent English speaking skills and her extensive and active network of friends and family.

37. To the extent Petitioner purports the authority to unilaterally revoke the Child's agreed upon relocation to the United States, Petitioner fails to state the basis for same. Further, and to the extent Petitioner claims to have done so in December of 2015, the petition was due to be filed within one year of same. Having failed to do so, the petition is untimely.

38. In the nearly two years since her arrival, the Child has settled into and acclimatized to her habitual residence in the United States, such that her removal would be tantamount to taking the Child out of the family and social environment in which her life has developed. Both Respondent and the Child are U.S. permanent residents, where the Respondent has maintained steady employment and residence. Since relocating to the United States as a permanent resident, the Child has been regularly enrolled in school, to include preschool, voluntary pre-K,

and currently kindergarten, attending field trips and outings as well as summer camp.  The Child attends daily after school activities and has routine visits with family residing in Florida, as well as friends.  The Child's friends include similarly aged children both within and outside of the Child's school setting and the Church where Respondent worked. In the past two years, the Child has learned to speak English fluently and Respondent, who is studies early child learning development, continues to teach Spanish at home to maintain the Child's bilingual fluency which in turns allows the Child to continue her communications with the Petitioner.

WHEREFORE, Respondent Hadylle Yusuf Lesmes respectfully requests the Petition be dismissed with prejudice, judgment be entered in her favor, Petitioner take nothing by this suit, Respondent recovers her reasonable attorneys' fees and costs, and be awarded such other legal and equitable relief that the Court deems just and proper.

Dated: September 29, 2017.

/s/ Kathleen M. Krak
Kathleen M. Krak, Esq.
Florida Bar No. 145548
kkrak@shutts.com
tenglish@shutts.com
Nicole Ballante, Esq.
Florida Bar 0125356
nballante@shutts.com
SHUTTS & BOWEN LLP

>300 South Orange Avenue, Suite 1000
>Orlando, Florida 32801
>Telephone: 407-423-3200
>Facsimile:  407-425-8316
>*Attorneys for Respondent, Hadylle Yusuf Lesmes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 29, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Middle District of Florida, Tampa Division using the CM/ECF system which will electronically notify all counsel or parties of record.

>/s/ Kathleen M. Krak
>Kathleen M. Krak, Esq.